UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**KAZEM RAFFII**

      Plaintiff,

  v.

**JOSHUA HUXOHL, an individual;**

**CENTRAL STATES LOGISTICS, INC. d/b/a DILIGENT DELIVERY SYSTEMS,**

**and HAVANA AUTO PARTS, INC.,**

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

      Plaintiff, Kazem ("Robbie") Raffii ("Raffii" or "Plaintiff"), by and through his attorneys, HKM Employment Attorneys, LLP, hereby files his Complaint against Joshua Huxohl ("Huxohl"); Central States Logistics, Inc. d/b/a Diligent Delivery Systems ("Diligent"); and Havana Auto Parts, Inc. ("Havana") (collectively "Defendants"), and in support thereof states as follows:

**<u>INTRODUCTION</u>**

      1.    Shortly after Mr. Raffii began working for Diligent and Havana (together, the "Company"), he was subjected to abusive comments from his coworkers and supervisors related to his race, national origin, sex/gender and perceived failure to conform to gender stereotypes. In

2020, as political unrest preceding the presidential election increased and the Black Lives Matter movement gained momentum, the harassment of Mr. Raffii escalated.

2.     The following are some, but not a complete list of, the comments Mr. Raffii was subjected to by his coworkers and supervisors:

(a) "Robbie is a terrorist."

(b) "You faggot!  Get the fuck out of my store!"

(c) "Jersey Shore faggot!"

(d) "Now, everyone refers to you as the Jersey Shore faggot."

(e) "Get me drivers that aren't sand-niggers!"

(f) "Do you aspeaky aenglish[?]"

(g) "White power."

(h) "BL(D)M."

(i) After *smelling* Mr. Raffii, "Yep!  There's a Persian behind the mask."

3.     In addition to the above, he was threatened at gunpoint and told he *must* go purchase marijuana for a coworker.

4.     Mr. Raffii reported the harassment to his supervisors on multiple occasions. However, little – if any – action was taken to stop the harassment, and Mr. Raffii continued to be subjected to severe and pervasive harassment constituting a hostile work environment.

5.     On or about November 20, 2020, Mr. Raffii filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") and Equal Employment Opportunity Commission ("EEOC").

6.     On December 9, 2020, the CCRD informed the Company that Mr. Raffii had filed

a Charge of Discrimination.

7.      On December 9, 2020 – approximately two hours after the CCRD informed the Company that Mr. Raffii had filed a Charge of Discrimination – the Company terminated Mr. Raffii's employment.

8.      Plaintiff brings this action for damages as a result of the Company's discrimination against him based upon his race, national origin, sex/gender and perceived failure to conform to gender stereotypes. In retaliation for Plaintiff reporting the same, Defendants adversely altered the terms and conditions of Plaintiff's employment and terminated Plaintiff.  Plaintiff brings claims against Defendants pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401, *et seq.* ("CADA").  In addition, Plaintiff brings claims for assault and battery against Defendant Huxohl.

## **PARTIES**

9.      Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

10.     Mr. Raffii is an individual who is and was at all times relevant to the Complaint a resident and domiciliary of Colorado.  At all times relevant to this Complaint, Mr. Raffii is and was a member of a protected class of individuals recognized under 42 U.S.C. § 2000e-2(a)(1), which prohibits discrimination based on national origin, race, sex/gender, and/or perceived failure to conform to gender stereotypes (Iranian, male).

11.     Upon information and belief, Defendant Huxohl is an individual who is and was at all times relevant to the Complaint a resident and domiciliary of Colorado.

12.    Central States Logistics, Inc. d/b/a Diligent Delivery Systems ("Diligent") is a Texas S corporation with a principal office at 9200 Derrington Road, Houston, Texas 77064, which is authorized to conduct business in Colorado.  At all relevant times, Diligent was an employer within the meaning of Title VII, Section 1981, and CADA.

13.    Havana Auto Parts, Inc. ("Havana") is a Colorado corporation with a principal office at 901 S. Havana, Aurora, Colorado 80012.  At all relevant times, Havana was an employer within the meaning of Title VII, Section 1981, and CADA.

## JURISDICTION AND VENUE

14.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

15.    This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and (a)(4).  The Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, as such claims arise out of the same case or controversy as Plaintiff's Title VII and Section 1981 claims.

16.    Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in Colorado.

## ADMINISTRATIVE REMEDIES HAVE NOT YET BEEN EXHAUSTED

17.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

18.    Plaintiff dually filed his Charges of Discrimination with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC") for hostile work environment, retaliation, and sex/gender discrimination, and/or discrimination based on

perceived failure to conform to gender stereotypes on or around November 20, 2020, Charge

Numbers E2100010579 and 32A-2021-00167 (Havana) and E2100010578 and 32A-2021-00166

(Diligent).

19.     On or about December 18, 2020, Plaintiff filed supplemental charges to address the

Company's wrongful termination of his employment.

20.     On or about May 20, 2021, Plaintiff filed supplemental charges to address the

Company's failure to rehire him.

21.     At the time of this filing, Mr. Raffii has requested but not yet received a Right to

Sue letter.  Once the Right to Sue issues, Mr. Raffii will request leave to amend his Complaint to

include additional claims pursuant to the Colorado Anti-Discrimination Act, as amended, C.R.S. §

24-34-402, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

Jurisdiction and venue will remain proper with this Court after amendment of the Complaint.

## FACTUAL ALLEGATIONS

22.     Plaintiff incorporates by reference the above paragraphs as though set forth

separately herein.

23.     Mr. Raffii began working for Havana and Diligent (together, the "Company") in or

about January 2017.

24.     Shortly after Mr. Raffii began working for the Company, his coworkers and

supervisors began to subject him to abusive comments related to his race, national origin,

sex/gender and perceived failure to conform to gender stereotypes.

25.     In 2020, as political unrest preceding the presidential election increased and the

Black Lives Matter movement gained momentum, the harassment increased drastically.

26.     The following are some, but not a complete list of, the comments Mr. Raffii was subjected to by his coworkers and supervisors:

27.     In or about February or March 2020, one of Mr. Raffii's coworkers commented that a customer was "terrorizing" another coworker.  In response, Josh Detling (Salesman for Havana) said: "Well, Robbie is a terrorist, so he should know about that!"  Although Richard Olinger (Manager for Havana) and Josh Huxohl (Dispatch for Havana, and Mr. Raffii's direct supervisor) witnessed this, they laughed at his expense rather than addressing the inappropriate and racially-charged comment.

28.     In or around April 2020, Mr. Raffii went to a Big O Tires store on Tower Road for a pick-up.  When Mr. Raffii arrived and asked for the part that he needed, Dan Appelman (Owner at Big O Tires) lashed out at Mr. Raffii.  He said: "You faggot!  Get the fuck out of my store."  Mr. Raffii returned to Havana and reported the incident to Mr. Olinger (Manager).  To Mr. Raffii's knowledge, Mr. Olinger did not take any action to address Mr. Appelman's harassing conduct.  Instead, Mr. Olinger told all of Mr. Raffii's coworkers about him being called "Faggot."

29.     A few weeks after the Big O incident, Mr. Olinger told Mr. Raffii: "Now, *everyone* refers to you as the Jersey Shore faggot."

30.     In or about April 2020, Mr. Huxohl was upset about a driver who was untrained and whose first language was not English.  Mr. Huxohl yelled at Mr. Olinger – in front of Mr. Raffii, along with customers and other Havana employees – "Get me drivers that aren't sand-niggers!"

31.     In addition, on or around May 12, 2020, Mr. Huxohl texted Mr. Raffii asking if he could borrow earbuds.  When Mr. Raffii did not quickly respond to his message, Mr. Huxohl

texted Mr. Raffii: "<u>Do you aspeaky aenglish?</u>"  The following is a copy of the harassing text

message from Mr. Huxohl:



      32.     On or around May 21, 2020, while at work, Mr. Huxohl told Mr. Raffii to go to a

marijuana dispensary to buy marijuana for him.  Mr. Raffii said no.  <u>Mr. Huxohl pulled a handgun</u>

<u>out of his desk drawer, pointed it at Mr. Raffii and – while the laser from the gun was aimed on</u>

<u>Mr. Raffii's chest (which he could tell from the laser) – said: "Are you sure you aren't going to</u>

<u>the dispensary for me?"</u>  Mr. Huxohl does not treat other employees, who are outside of Mr.

Raffii's protected classes, this way.

33.     On May 23, 2020, Mr. Huxohl tagged Mr. Raffii into a conversation involving what

Mr. Raffii believed was a white supremacist hate group on Twitter.  Mr. Raffii responded to Mr.

Huxohl that it was a dangerous link, i.e. it was a white supremacist hate group.

34.     Instead of heeding Mr. Raffii's warning, or apologizing, Mr. Huxohl then posted

threatening and racist messages on Mr. Raffii's Twitter page: "<u>White power</u>," "<u>I'd fucking swing</u>

<u>2 swords at any mother fucker skateboarding on my shit.  BL(D)M</u>," and "<u>Get the fuck off twitter</u>

<u>and do something about it</u>."

35.     The following is a copy of Mr. Huxohl's harassing posts:



36.     <u>On May 24, 2020, Mr. Raffii reported to Mr. Olinger about the harassing Twitter messages and other harassment by Mr. Huxohl</u>.

37.     Mr. Olinger promised to take care of it; however, to Mr. Raffii's knowledge, nothing was done.

38.     According to Havana, instead of appropriately addressing the issue with Mr. Huxohl and attempting to stop further harassment of Mr. Raffii, Mr. Oligner "admonished both Huxohl and Robbie, telling them to refrain from engaging in such conduct."

39.     On or about May 25, 2020, Mr. Huxohl began to intentionally interfere with Mr. Raffii's job duties – Mr. Huxohl blocked his phone number (and/or refused to respond to Mr. Raffii's calls and texts) making it significantly more difficult for Mr. Raffii to complete tasks at work because, previously, they frequently communicated about loads by cell phone.

40.     Mr. Huxohl's decision to block (and/or not respond to) Mr. Raffii's messages began to impact delivery times because it impaired Mr. Raffii's ability to communicate about traffic and road closures.   Mr. Raffii had to communicate with Mr. Olinger and/or use the tablet to communicate with the Company; otherwise, because of Mr. Huxohl blocking and/or not responding to him, Mr. Raffii would not have had access to the pertinent delivery information.

41.     Upon information and belief, following Mr. Raffii's report to Mr. Olinger regarding harassing and discriminatory comments by Mr. Huxohl – and up to the time of his unlawful termination – Mr. Huxohl often gave Mr. Raffii more difficult loads than other employees, such as multiple deliveries at one time, and more deliveries at a time than any other driver.

42.     Upon information and belief, following Mr. Raffii's reports regarding discrimination, Mr. Huxohl unfairly distributed work.

43.     In or about June 2020, Mr. Huxohl threw all of Mr. Raffii's delivery items – unbagged and unchecked – onto the floor, to further harass and be spiteful towards Mr. Raffii.  For all other employees, these items would be put at a delivery check desk and logged – as they should have been – but, <u>for Mr. Raffii, Mr. Huxohl threw them onto the ground to show his contempt for Mr. Raffii</u>.

44.     Upon information and belief, Denise Kline (Human Resources for Havana) witnessed this incident.

45.     Upon information and belief, after Ms. Kline witnessed this incident, Mr. Raffii was given a new route.

46.     However, Mr. Raffii was forced to continue interacting with Mr. Huxohl and the harassment continued.

47.     On or about July 7, 2020, Mr. Raffii went to the Havana store on South Havana. When he arrived, <u>Roger Denton (Manager) walked over to Mr. Raffii, took his mask off, *sniffed Mr. Raffii*</u> and said: "Yep!  There's a Persian behind the mask."

48.     <u>On or about August 26, 2020, Mr. Raffii reported the ongoing harassment to Keith Littlefield (Head of Diligent, Denver)</u>.

49.     On or about August 28, 2020, Mr. Littlefield responded to Mr. Raffii's report by offering to assign him primarily to Store 4 (Havana's Arapahoe/Dayton location).

50.     Mr. Littlefield likewise promised to try to keep Mr. Raffii away from the individuals who had been harassing him, which had occurred largely at Havana's Store 2.

51.     However, Mr. Littlefield's vow did not last long.

52.     On or about September 2, 2020, Mr. Raffii was again assigned to work at Havana's

Store 2, where he had to work with Mr. Olinger and Mr. Huxohl.  Mr. Huxohl commented: "You won't last long, I guarantee it."  By this, he was threatening that he would try to urge the Company to terminate Mr. Raffii.

53.     On or about September 5, 2020, Mr. Raffii reported the ongoing harassment – constituting a hostile work environment – to management at both Diligent and Havana Auto Parts.

54.     On or around September 6, 2020, Nicole Camacho (Manager at Diligent) said that she would not send Mr. Raffii to Havana's Store 2, where Mr. Olinger and Mr. Huxohl worked, anymore.

55.     To Mr. Raffii's knowledge, no other action was taken to address or attempt to stop the ongoing harassment.  Instead, the Company continued to assign Mr. Raffii to runs at the stores where his harassers worked, and the gravity and frequency of the incidents of harassment continued to worsen and increase.

56.     On or about September 9, 2020, Mr. Raffii was instructed to take a delivery to Havana Auto Parts' Store 2 location (although both Diligent and Havana had previously promised to stop sending Mr. Raffii there, in an attempt to avoid the ongoing harassment).

57.     While there, Mr. Raffii spoke with Josh Detling (Havana) about the new driving route.  Mr. Huxohl interrupted Mr. Raffii to state: "You won't last long!  Guaranteed."  By this, it seemed that Mr. Huxohl had spoken with other employees about Mr. Raffii, and that they intended to terminate Mr. Raffii – or to force him to resign – in retaliation for reporting the ongoing harassment.

58.     On or about September 15, 2020, Mr. Raffii again went to a delivery at Havana Auto Parts' Store 2, as instructed.  When Mr. Huxohl saw Mr. Raffii, he shouted: "Faggot!"

59.     On or about October 22, 2020, Mr. Raffii reported the ongoing harassment to Eva Crone (Store Manager for Havana Auto Parts) and Jamie Ferguson (Dispatcher for Havana Auto Parts).  He also reported to Ms. Crone that Ms. Ferguson was giving Anthony Burton (driver for Diligent), significantly better routes than Mr. Raffii and the other drivers.  Ms. Crone said that she was not going to make an official report, because she was worried that it could cost her a promotion she was anticipating receiving soon.  After discussing the issue, Mr. Raffii went out on a delivery.

60.     Later that day, Ms. Ferguson and Mr. Burton approached him aggressively – Mr. Burton said: "Keep my name out of your fucking mouth!  I don't care what's going on but don't bring me into it!  I'll kill you!"  He pushed Mr. Raffii against the wall and said, "I'll kill you!  I'll beat your ass, you little fag."  Ms. Crone and Karl (last name unknown) (both Store Managers for Havana) witnessed this.  Despite this occurring in front of two Store Managers, to Mr. Raffii's knowledge, nothing was done to address Mr. Burton's threat and derogatory comment about Mr. Raffii's perceived failure to conform to gender stereotypes.  According to Havana, Ms. Ferguson merely instructed both Mr. Raffii and Mr. Burton to "walk away."  [Havana's Position Statement, Exh. C, ¶ 6].  Employees outside of Mr. Raffii's protected class(es) are not treated like this.

61.     On or about October 25, 2020, Nicole Camacho (Manager at Diligent) informed Mr. Raffii that, due to his reports of ongoing harassment, she was again switching Mr. Raffii's route. Ms. Camacho threatened that: "This is the last route I will give you."  By this, Ms. Camacho meant that this was the last opportunity she would give Mr. Raffii to continue working for the Company.  Further, she meant that if Mr. Raffii reported further harassment, then he would be terminated.

62.     On or about November 20, 2020, Mr. Raffii filed a Charge of Discrimination with

the CCRD and EEOC.

63.     On December 9, 2020, the CCRD informed the Company that Mr. Raffii had filed a Charge of Discrimination.

64.     On December 9, 2020 – approximately two hours after the CCRD informed the Company that Mr. Raffii had filed a Charge of Discrimination – the Company terminated Mr. Raffii's employment.

65.     In or about December 2020, the Company offered Mr. Raffii a new route.

66.     Mr. Raffii responded to accept the new route, and the Company claimed that they had already filled the spot.

67.     Since that time, Mr. Raffii has asked the Company to assign him a new route.

68.     To date, the Company has not offered Mr. Raffii any other routes.

**FIRST CLAIM FOR RELIEF**
**Assault**
**(As to Defendant Huxohl)**

69.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

70.     Defendant Huxohl intended to cause harmful and/or offensive physical contact with Plaintiff or intended to place Plaintiff in apprehension of such contact.

71.     Defendant Huxohl placed Plaintiff in apprehension of immediate physical contact.

72.     Defendant's contact of Plaintiff was or appeared to be harmful or offensive.

73.     Defendant Huxohl's contact of Plaintiff resulted in injuries to Plaintiff.

74.     Defendant Huxohl had no justification for his contact with Plaintiff.

75.     Defendant Huxohl had no justification for his contact with Plaintiff.

76.     As a direct and proximate result of Defendant Huxohl's assaults against Plaintiff that were described above, Plaintiff sustained physical and/or emotional injury.

77.     As a result of Defendant Huxohl's aforementioned acts and omissions, Plaintiff has suffered damages, injuries, and losses, including economic losses, emotional distress, and pain and suffering, which are highly personal, stem from Defendant Huxohl's harassment of Plaintiff, and did not arise out of Plaintiff's employment.  Further, Plaintiff's injuries did not result from risks inherent in his employment.

**SECOND CLAIM FOR RELIEF**
**Battery**
**(As to Defendant Huxohl)**

78.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

79.     Defendant Huxohl intended to cause offensive and/or harmful physical contact with Plaintiff or knew he would probably make such contact.

80.     A harmful or offensive contact with Plaintiff occurred.

81.     As a direct and proximate result of Defendant Huxohl's conduct and batteries against Plaintiff that were described above, Plaintiff sustained physical and/or emotional injury.

82.     As a result of Defendant Huxohl's aforementioned acts and omissions, Plaintiff has suffered damages, injuries, and losses, including economic losses, emotional distress, and pain and suffering, which are highly personal, stem from Defendnt Huxohl's harassment of Plaintiff, and did not arise out of Plaintiff's employment.  Further, Plaintiff's injuries did not result from risks inherent in his employment.

**THIRD CLAIM FOR RELIEF**
**Discrimination and Harassment Based on Race, Ancestry, Ethnicity, Ethnic Traits, and/or**
**National Origin in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981**
**("Section 1981")**
**(As to Defendants Diligent and Havana, collectively "the Company")**

83.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

84.     Section 1981 prohibits discrimination in the making and enforcement of contracts and is designed to include a remedy against discrimination in employment on the basis of race, ancestry, ethnicity, ethnic traits, and/or national origin.

85.     Under Section 1981, all persons have the same right to make and enforce contracts and to enjoy full and equal benefit of all laws.

86.     Employment contracts are among those contracts protected by Section 1981.

87.     Defendants Diligent and Havana (collectively, "the Company") entered into contracts with Plaintiff that are subject to Section 1981.

88.     Plaintiff was treated differently by the Company than similarly-situated employees who did not have Plaintiff's race, ancestry, ethnicity, ethnic traits, and/or national origin.

89.     Plaintiff was denied full and equal benefit of all laws based on his race, ancestry, ethnicity, ethnic traits, and/or national origin unlike similarly situated employees who did not have Plaintiff's race, ancestry, ethnicity, ethnic traits, and/or national origin.

90.     Based on the above-described acts, practices, and omissions, the Company engaged in unlawful discrimination under Section 1981 based on Plaintiff's race, ancestry, ethnicity, ethnic traits, and/or national origin.

91.     The Company's harassment of Plaintiff was aimed at Plaintiff because of his race,

ancestry, ethnicity, ethnic traits, and/or national origin, resulting in adverse impacts to the terms and conditions of Plaintiff's employment and further subjecting Plaintiff to harassment and a hostile work environment.

92.     At the time the above-described conduct occurred and as a result of such conduct, Plaintiff believed his work environment to be hostile or abusive.

93.     The Company knew or should have known of the abusive conduct and failed to take prompt, remedial action to stop its conduct.

94.     As such, the Company violated 42 U.S.C. § 1981 and discriminated against Plaintiff by denying him full and equal benefit of all laws, subjecting him to sufficiently severe or pervasive harassment based on his race, ancestry, ethnicity, ethnic traits, and/or national origin so as to alter the conditions and terms of Plaintiff's employment, and by failing to act and condoning or tolerating such harassment, subjecting Plaintiff to less favorable terms and conditions of employment by imposing heightened and/or disproportionate expectations and demands on Plaintiff, and ultimately terminating Plaintiff.

95.     The reasons that the Company submits for changing the terms and conditions of Plaintiff's employment and terminating him, if any, are false and pretext for unlawful discrimination.

96.     In unlawfully discriminating and retaliating against Plaintiff, the Company acted intentionally or in face of a perceived risk that their decisions would violate federal law, thereby necessitating the imposition of punitive damages.

97.     As a result of the Company's above-described conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, and he is entitled to

general and special damages, and economic damages including front and back pay.  Plaintiff is

also entitled to and seeks his attorneys' fees and costs (including expert witness costs) pursuant to

42 U.S.C. § 1988(b) and (c).

**FOURTH CLAIM FOR RELIEF**
**Retaliation in Violation of Section 1981**
**(As to Defendants Diligent and Havana, collectively "the Company")**

98.     Plaintiff incorporates by reference the above paragraphs as though set forth

separately herein.

99.     Plaintiff engaged in activity protected by Section 1981 when he reported

Defendants Diligent and Havana's unlawful and discriminatory practices.

100.    Defendants Diligent and Havana (collectively, "the Company") subjected Plaintiff

to less favorable terms, conditions, and privileges of employment – and terminated Plaintiff –

because he reported race, ancestry, ethnicity, ethnic traits, and/or national origin-based harassment

to Defendants.

101.    Plaintiff's opposition and complaints regarding the Company's illegal practices

were protected activities within the meaning of Section 1981.

102.    The Company unlawfully retaliated against Plaintiff in the terms and conditions of

his employment and subjected Plaintiff to further harassment because he engaged in the above-

described statutorily-protected activities.  For example, the Company, among other things,

subjected Plaintiff to altered terms and conditions of employment when the Company reduced

Plaintiff's delivery opportunities after he reported the discrimination and when the Company

terminated Plaintiff.  The Company further failed and refused to take corrective action that would

prevent Plaintiff from being subjected to further harassment, and instead terminated Plaintiff.

103.    A causal connection exists between Plaintiff's protected activities and the Company's unlawful retaliation.

104.    In unlawfully discriminating and retaliating against Plaintiff, the Company acted intentionally or in face of a perceived risk that their decisions would violate federal law, thereby necessitating the imposition of punitive damages.

105.    As a result of the Company's retaliatory conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, and he is entitled to general and special damages, and economic damages including front and back pay.  Plaintiff is also entitled to and seeks his attorneys' fees and costs (including expert witness costs) pursuant to 42 U.S.C. § 1988(b) and (c).

## FIFTH CLAIM FOR RELIEF
### Negligent Hiring, Supervision, and/or Retention
#### (As to Defendants Diligent and Havana, collectively "the Company")

106.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

107.    Defendants Diligent and Havana (collectively, "the Company") had a duty to vet and supervise Defendant Huxohl.

108.    The Company had a duty to use reasonable care when hiring Defendant Huxohl to ensure that they did not hire an individual who might pose a threat of injury to his fellow employees.

109.    The Company had a duty to use reasonable care to supervise Defendant Huxohl.

110.    The Company was negligent in hiring and/or supervising Defendant Huxohl.

111.    The Company's lack of supervision allowed Defendant Huxohl to use and abuse

the power he had over Plaintiff, including by subjecting him to unwelcomed contact and harassment, and negligently and/or intentionally inflicted emotional distress.

112.    The Company was on notice or reasonably should have been on notice that Defendant Huxohl's conduct created a risk of harm to their other employees, including Plaintiff. The Company's negligence in addressing Defendant Huxohl's behavior, and retaining him, condoned his actions and gave him free reign to commit tortious conduct toward Plaintiff.  With proper supervision and investigation, the Company would have known they should not have retained Defendant Huxohl.

113.    As a result of the Company's negligence in hiring, supervising, and/or retaining Defendant Huxohl, Plaintiff has been damaged in amounts to be proven at trial.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants and order the following relief as allowed by law:

A.    Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B.    Back pay and benefits;

C.    Front pay and benefits;

D.    Punitive damages and exemplary damages, as permitted by law;

E.    Attorneys' fees and costs of this action (including expert witness fees), as permitted by law;

F.    Pre-judgment and post-judgment interest at the highest lawful rate; and

G.    Such further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Respectfully submitted this 21st day of May 2021.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: *s/ Jesse K. Fishman*
      Jesse K. Fishman (44807)
      Claire E. Hunter (39504)
      HKM Employment Attorneys LLP
      730 17th Street, Suite 750
      Denver, Colorado 80202
      Telephone: (720) 668-8989
      jfishman@hkm.com
      chunter@hkm.com
      *Attorneys for Plaintiff*